Yockers *v.* Department of Transportation.

Argued November 10, 1971, before Judges WILKIN-SON, JR., MENCER and ROGERS, sitting as a panel of three.

*Dennis J. Monaghan,* for appellant.

*David A. Johnston, Jr.,* Assistant Attorney General, with him *Anthony J. Maiorana,* Assistant Attor-

ney General, *Robert W. Cunliffe,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, January 6, 1972:

On March 8, 1970, Kevin Andrew Yockers (appellant) was arrested and charged with driving under the influence of intoxicating liquor in violation of Section 1037 of The Vehicle Code, Act of April 29, 1959, P. L. 58, as amended, 75 P.S. §1037, after having an automobile accident while driving on Belvidere Road, L. R. 48025, approximately four miles north of Martin's Creek in Lower Mt. Bethel Township, Northampton County. Having received the Intoxication Report from the Pennsylvania State Police, the Secretary of Revenue (now Secretary of Transportation) conducted a departmental hearing on the matter on June 5, 1970. On July 8, 1970, a license suspension notice was sent to appellant informing him that under Section 618(b) (1), 75 P.S. §618(b)(1), his license was suspended for six months, effective July 23, 1970, for a violation of Section 1037. On September 8, 1970, after granting a supersedeas on July 20, 1970 (appellant's license was restored July 22, 1970), the Court of Common Pleas of Northampton County, after a *de novo* hearing, sustained the action of the Secretary and dismissed appellant's appeal to that court. Appellant then took an appeal to the Superior Court on October 9, 1970, which court transferred the appeal to this court on October 13, 1970.

The court below, on the basis of the testimony and evidence presented to it, found that the Commonwealth had met its burden of showing by a preponderance of the evidence that appellant was operating his vehicle while under the influence of intoxicating beverages.

The arresting officer, State Trooper Herman Todd, testified, in pertinent part, as follows: "Q. Will you

recite for the Court the circumstances of that arrest? A. I was summoned to an accident on Martins Creek-Belvidere Road in Upper—Lower Mount Bethel Township; and upon arriving at the scene of the accident, I saw the defendant's car off the left berm of the road in a cow pasture; and the defendant was alongside the berm of the road. When I walked up to the defendant, I noticed that he was—he was unable to stand by himself and his speech was mumbled. He was babbling something about drinking at home and a fight with his father; and he was on his way to Stroudsburg to go fishing; and he mumbled something like that and then the ambulance came and they took him to the Easton Hospital. Q. Did you observe anything else or detect anything else at that time? A. Well, there was an odor of alcohol about him and I—like I said, he was unable to stand by himself and he was mumbling. * * * Q. Did you observe whether or not he was injured? A. Yes. He was cut around the mouth. I believe he had blood on his face. Q. But you did say that the ambulance came and got him? A. Yes, sir. Q. Did they place him on a carrier and put him in the—A. Yes, sir; after he put up some struggle with them. Q. He did? A. Yes, he did. In fact, when he tried to get up, he tried to punch me at the scene and then the ambulance crew had quite a struggle getting him on the stretcher. * * * Q. He did say that he was operating the car? A. Yes, sir. He—while he was mumbling, he said he was driving. He told me he was doing eighty-five miles an hour down the Lehigh Valley Thruway, Route 22; and that he was drinking on his way down and that he had drank at home. He mumbled these."

The ambulance took appellant to Easton Hospital where he was examined by Robert S. Stein, M.D., within two hours of the accident. Dr. Stein described his examination as follows: "A. I received a telephone call

from the—someone from the Pennsylvania State Police Department asking if I would come to the Easton Hospital Emergency Ward to examine a gentleman that they had brought there; and I went there approximately 5 p.m. on August 8. And at that time I saw Mr. Kevin Yockers. The significant parts of the examination, as far as I was concerned, his speech was thick but he had an injury to the upper lip which could possibly have accounted somewhat for the difficulty with his speech. There was an odor of alcohol about his breath. His conjunctiva, or the whites of the eyes, were congested or bloodshot. In questioning him, he was confused as to the time and the date and as to where he was. At the time that I was examining him, he was quiet and cooperative. We did not try his walking ability because he was unable to stand and walk at that time. He had difficulty and did not accomplish well the tests of coordination. And lastly, I drew blood from him for a blood alcohol test, which then was performed at the Easton Hospital laboratory. * * * THE COURT: I am only interested in whether you, as a result of your examination of this individual at that time, found him to be under the influence of intoxicating liquors. THE WITNESS: Yes, sir. It was my opinion at the time I examined him that he was under the influence of intoxicating beverages. MR. CHARRON: Q. Did you observe any injuries of Mr. Yockers? A. The only injury of note that I was aware of was the contusion of his upper lip. Q. In your medical opinion—do you have a medical opinion as to whether or not those injuries had any effect on his condition as you found it at that time, the condition of intoxication? A. Yes, sir. My opinion was that those injuries had no effect on the condition of his intoxication."

In appeals of this nature our duty is to examine the testimony to determine whether the findings of the

court below are supported by competent evidence and to correct any erroneous conclusions of law, and the action of the lower court will not be disturbed on appeal except for manifest abuse of discretion. *Commonwealth v. McCartney*, 2 Pa. Commonwealth Ct. 540, 279 A. 2d 77 (1971), and cases cited therein.

, Appellant bases this appeal on two contentions: (1) "There was no testimony or other evidence to prove ownership of the automobile whereby a presumption could have arisen that the Petitioner was the driver of the automobile."; and (2) "All the testimony of Officer Todd and Doctor Stein relating to the Petitioner's condition of sobriety is post facto and the Commonwealth . . . made no effort and did not relate the Commonwealth's testimony as to the time or circumstance to, at the very least, create an inference that the Defendant was under the influence while operating a motor vehicle."

As to the *first* of these, one of the Commonwealth's exhibits, the Certification of Intoxication Report, indicated, by license plate number and registration number, that the automobile involved in the accident belonged to appellant; appellant himself was found lying by the side of the road thirty to forty feet from his car; there was no evidence that there were other occupants in the automobile; and appellant told State Trooper Todd that he had been driving the car.

We interpret the *second* contention to mean that the testimony of the arresting officer and the examining doctor should be excluded from consideration simply because they did not actually see appellant in an inebriated condition while he was physically driving the car. But the Commonwealth's burden in this civil proceeding is to prove by a preponderance of the evidence, not, as in a criminal proceeding, beyond a reasonable doubt. On this appeal, appellant does not dis-

pute the fact that he was intoxicated. There was vir-
.tually no other conclusion that State Trooper Todd
could have reached except that appellant had become
intoxicated, had driven his car off the highway, and
had managed to stumble or crawl back to the edge of
the roadway. As to Dr. Stein, "In practically every
drunken driving case the examining doctor does not
see the accused motorist until after the event which
makes him a defendant, yet the doctor's evidence is ac-
cepted as relevant, competent and revelatory." *Jar-
dine v. Upper Darby Lodge No. 1973*, 413 Pa. 626, 630,
198 A. 2d 550, 552 (1964).

We conclude that the circumstances surrounding
appellant's arrest and medical examination are so com-
pelling as to exclude any conclusion other than that
reached by the court below.

Order affirmed. A reinstated suspension of six
months shall be issued within thirty days.