## Stahl License

*Charles J. Conturs*, for appellant.
*Charles E. Donahoe*, for Commonwealth.

MIMS, *J.*, October 26, 1978—This case arose by way of an appeal to this common pleas court by defendant, Harry E. Stahl, Jr., from an order of the Director of the Bureau of Traffic Safety of the Pennsylvania Department of Transportation, recalling defendant's motor vehicle operating privileges until such time as defendant presents satisfactory evidence proving his competency, pursuant to the Act of June 17, 1976, P.L. 162 (effective July 1, 1977), 75 Pa.C.S.A. §1519(c). Defendant's appeal to this court is as prescribed by the Act of June 17, 1976, P.L. 162, sec. 1, 75 Pa.C.S.A. §1550. A de novo hearing was held thereon before the undersigned and we make the following

## FINDINGS OF FACT

1. Defendant-appellant resides at 201 Arborlea Avenue, Morrisville, Pa., and is a licensed operator of motor vehicles in the Commonwealth of Pennsylvania, and was born June 2, 1897.

2. On August 14, 1977, a police officer of the Morrisville, Pennsylvania, Police Department, forwarded a recommendation for a special operator's examination of defendant-appellant to the Department of Transportation, as a result of specified erratic driving which nearly caused an accident at 11:25 a.m. on that August date.

3. By letter dated August 29, 1977, defendant-appellant was notified by the Bureau of Traffic Safety of the Department of Transportation to report within 30 days to any examining point for a special operator's examination.

4. The same letter required defendant-appellant also to have a physician, chosen by defendant-appellant, complete and remit a general medical report on an enclosed form within 30 days.

5. The same notice of August 29, 1977, also specifically notified defendant-appellant that consideration of his operator's privilege was to be dependent upon the outcome of his special operator's examination.

6. William Tomlinson, M.D., sent to the bureau the general medical form, dated September 9, 1977, indicating that defendant-appellant has no condition or disease which could interfere with his mental or physical ability to drive a motor vehicle and that he considers the latter can be a safe and competent driver.

7. A certificate of visual efficiency was submitted in the Commonwealth's exhibits, completed on October 26, 1977, by Jerome A. Montana, M.D., F.A.C.S., indicating defendant-appellant has no need for corrective lenses.

8. On October 26, 1977, defendant-appellant took and failed a special operator's examination at the Trevose examination point.

9. On December 26, 1977, the Director of the Bureau of Traffic Safety mailed notice of recall of defendant-appellant's operating privileges, effective January 16, 1978, until satisfactory evidence is presented as to proof of his competency.

10. On January 12, 1978, upon petition and appeal to this court, the recall was stayed by supersedeas until a scheduled hearing might be held.

11. On February 16, 1978, upon stipulation of counsel, and before a full hearing had occurred, this court ordered that defendant-appellant was to have another opportunity to take the special

operator's examination; the supersedeas was to remain in effect until a final ruling by this court.

12. On March 3, 1978, the Bureau of Traffic Safety mailed notice to defendant-appellant to report to any examining point within 30 days to take the special operator's examination.

13. On March 23, 1978, defendant-appellant took the special operator's examination at the Dublin examination point and failed the examination.

## DISCUSSION

When the Morrisville, Pennsylvania, Police Department on August 14, 1977, recommended to the Department of Transportation that defendant-appellant should be given a special driver's examination, the new Motor Vehicle Code provisions had already gone into effect: Act of June 17, 1976, P.L. 162, effective July 1, 1977.

The Bureau of Traffic Safety appears to have moved thereafter against defendant-appellant under an interpretation of section 1519(c) of the new act. That is, the bureau required a general physical report from a physician, Exhibit 7. There is some indication, also, that the bureau required a vision examination, insofar as defendant-appellant was examined by one Dr. Montana, and his report was submitted to the bureau on a bureau form, even though on the bureau's checklist of requirements, sent to defendant-appellant on August 29, 1977, the bureau did not check the block indicating this was required. The bureau also required defendant-appellant to take a special operator's examination. The bureau's notice recalling defendant-appellant's operating privileges, sent on December 26, 1977, after he had failed the special

operator's examination, indicates that the recall would last "until satisfactory evidence is presented as to proof of competency as authorized by Section 1519(c)."

Section 1519(c) of the Act of June 17, 1976, supra, provides in pertinent part: *"Recall of operating privilege.*—The department shall recall the operating privilege of any person whose incompetency has been established under the provisions of this chapter. The recall shall be for an indefinite period until satisfactory evidence is presented to the department in accordance with regulations to establish that such person is competent to drive a motor vehicle."

But section 1519(a) limits the methods by which the Department of Transportation can establish incompetency. That section does not give the department the alternative of ordering a special operator's examination. Section 1519(a) provides:

*"General Rule.* The department, having cause to believe that a licensed driver or applicant may not be physically or mentally qualified to be licensed, may obtain the advice of a physician who shall cause an examination to be made or who shall designate any other qualified physician. The licensed driver or applicant may cause a written report to be forwarded to the department by a physician of the driver's or applicant's choice. Vision qualifications shall be determined by an optometrist or ophthalmologist. The department shall appoint one or more qualified persons who shall consider all medical reports and testimony and determine the competency of the driver or the applicant to drive."

Thus the department's test of competency under section 1519 might only be based upon the physical and ocular reports submitted to the department and placed in evidence before this court by the department.

Nevertheless, two questions remain. First, there is the possibility that the department might still have been able to require the special operator's examination and utilize its results in its competency findings by some other section of the Motor Vehicle Code. Secondly, whether the department's finding of incompetency can be supported by the physical and ocular reports alone.

The Motor Vehicle Code does provide a procedure whereby the department can require a holder of a Pennsylvania driver's license to submit to an operator's examination. Such procedure is found in the Act of June 17, 1976, supra, 75 Pa.C.S.A. § 1514(b). That subsection reads as follows (with emphasis added):

"(b) Examination of applicants for renewal.— The department may require persons applying for renewal of a driver's license to take and successfully pass a physical examination or a vision examination by an optometrist or ophthalmologist, or both examinations, *if the department has reason to believe,* either based on knowledge of the person or on statistical inference, that *the person may be a traffic safety hazard. The department may require the applicant to take and successfully pass such additional tests as the department may find reasonably necessary* to determine the applicant's qualification according to the type or general class of license applied for *and such*

*examination may include any or all of the other tests required or authorized upon original application* by section 1508 (relating to examination of applicant for driver's license). Upon refusal or neglect of the person to submit to the examination, the driver's license shall not be renewed until such time as the examination is successfully completed." (Emphasis supplied.)

Clearly the department may order a person to take the operator's examination (described in the Act of June 17, 1976, supra, 75 Pa.C.S.A. §1508) when the holder of the license applies for renewal of that license and the department believes it has grounds for so acting. In the present case it is quite obvious that the department did not wait until defendant-appellant applied for a renewal. The consequence of having proceeded improperly to require defendant-appellant to take the special operator's examination is that the results of such test should have been stricken from the department's considerations of the competency of defendant-appellant, and will not be used by this court.

The department, however, offers the results of the second special operator's examination as the basis for its finding of incompetency; this second examination was pursuant to an order of this court dated February 16, 1978. The Act of June 17, 1976, supra, 75 Pa.C.S.A. §1514(c), reads as follows: "Re-examination requested by court.—The department shall reexamine any person when requested to do so by a court. Upon the conclusion of such examination, the department may take any of the actions described in subsection (b) and shall report its findings and action to the court if such report is requested."

Nevertheless, that subsection speaks of re-examining, and refers clearly to subsection (b), supra. It was clearly the purpose of permitting a court-ordered re-examination to correct problems in the taking of an earlier examination and not, however, to overcome procedural defects which had erroneously led to the requirement of the examination itself. This court's order of February 16, 1978, was not the product of a complete hearing of this appeal but was only the result of an agreement of counsel. Defendant-appellant by submitting to the second examination did not waive the argument against the validity of the department's interpretation of 75 Pa.C.S.A. §1519, which this court settles in favor of defendant-appellant at this time.

Since the results of neither of the special operator's examinations can be used to support the department's finding of incompetency and recall of the operator's privileges of defendant-appellant, it remains to consider whether such finding and recall can be supported otherwise.

The department has submitted into evidence here only the medical and vision examinations of defendant-appellant, completed by Drs. Montana and Tomlinson. Such reports are, without any doubt, completely supportive of the continuation of defendant-appellant's driving privileges. In a de novo appeal of this sort, the Commonwealth has the burden of showing by a preponderance of the evidence that there was a basis for its action against the operator's privileges. See Com. v. Critchfield, 9 Pa. Commonwealth Ct. 349, 305 A. 2d 748 (1973); Yockers v. Department of Transportation, 4 Pa. Commonwealth Ct. 95, 285 A. 2d 893 (1972). This being the only evidence which might possibly support the department's finding of incompetency, it

remains as the only proper and legal course to find in favor of Harry E. Stahl, Jr., reversing the department: Rabin Motor Vehicle Operator License Case, 196 Pa. Superior Ct. 555, 176 A. 2d 460 (1961).

## ORDER

And now, October 26, 1978, the within appeal is sustained, and the official notice of the Department of Transportation of December 26, 1977, is ordered rescinded.