Commonwealth *v.* Jenks.

Argued October 6, 1972, before Judges CRUMLISH, JR., WILKINSON, JR., and BLATT, sitting as a panel of three.

*Joseph P. Phelps, Jr.,* with him *Koch, Phelps and Salus,* for appellant.

*Stuart A. Liner,* Assistant Attorney General, with him *Anthony J. Maiorana,* Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE BLATT, November 8, 1972:

This is an appeal from an order of the Court of Common Pleas of Montgomery County upholding the suspension of the appellant's motor vehicle operating privileges.

An information had been filed with a District Justice charging the appellant, Joan Jenks (Jenks), with violating §626 of The Vehicle Code, Act of April 29, 1959, P. L. 58, 75 P.S. §626,[1] and she was required to pay a fine and costs amounting to thirty dollars. Based

---

[1] "No person shall authorize or permit a motor vehicle or tractor owned by him or under his control to be operated by any person who has no legal right to do so, or in violation of any of the provisions of this act."

on this information, and following a departmental hearing, her operating privileges were suspended for two months by the Secretary of Transportation. Pursuant to the provisions of §620 of The Vehicle Code, 75 P.S. §620, Jenks then appealed to the court below, which heard the matter de novo as mandated by *Commonwealth v. Emerick*, 373 Pa. 388, 96 A. 2d 370 (1953). It held that the burden is on the appellant in a §626 case to show that he had no knowledge or reason to know that the person to whom he had given a motor vehicle had no legal right to operate it, and that Jenks, having failed to carry this burden, was subject to the suspension of her license.

The facts apparently were that Jenks was in possession of an automobile, title to which was in the name of her estranged husband. The undisputed testimony of the husband was to the effect that she had complete control over the automobile and that title would be transferred to her when their divorce was final. On March 25, 1970, Jenks loaned the car to one Charles Konkenski (Konkenski) whom she had then known for about three or four weeks. Konkenski was subsequently stopped by a police officer, and it was then determined that he had no operator's license. Jenks testified that she had seen Konkenski driving his own car and had once glimpsed what she had believed to be a Maine operator's license in his wallet. There was no other testimony introduced by either side pertaining to Jenks' knowledge of Konkenski's right to operate a motor vehicle. The court stated that it did not believe Jenks' testimony and, therefore, it sustained the license suspension as ordered by the Secretary.

The essential issue in this case is whether or not Jenks must have had knowledge that Konkenski had no legal right to operate an automobile if her license is now to be suspended for a §626 violation. If such

knowledge is necessary, the resulting issue is whether the burden is on the Commonwealth to prove that she had such knowledge or on Jenks to show that she did not.

So far as we have been able to discover, the only prior appellate court case in Pennsylvania where this issue of knowledge was involved is *Moyer Automobile License Case*, 359 Pa. 536, 59 A. 2d 927 (1948). There, the Supreme Court upheld a lower court which had reversed the suspension of a license for an alleged violation of §626. The Court said: "Upon a hearing, the learned trial judge in the court below found as a fact that the appellee had no knowledge or reason to believe that the license of . . . the operator of appellee's motor vehicle had been revoked, and did not knowingly violate the provision of the Code. The evidence amply supports the finding of the court below and no error of law appears in the record." 359 Pa. at 538, 59 A. 2d at 927. *Moyer* certainly indicates that knowledge plays some role in a §626 case, but it hardly defines what that role is, and the lower courts have split on interpreting its meaning. A few of our lower courts have held that knowledge on the part of the defendant that the operator was not licensed is not a necessary element of a §626 offense. *Commonwealth v. Kent*, 18 D. & C. 2d 528 (1958); *Commonwealth v. Donmoyer*, 54 D. & C. 492 (1945). Most of our lower courts, however, have held that: "To warrant the suspension of the operator's license of an owner of a vehicle for permitting a person having no legal right to do so to operate said vehicle in violation of Section 626 of The Vehicle Code, the Commonwealth has the burden of proving that the owner had either knowledge or reason to believe that the operator did not have the legal right to operate the vehicle." *Commonwealth v. Pyzia*, 52 Luz. 199, 202 (1962). *See Commonwealth v. Dombach*, 62 Lanc. Rev.

427 (1970); *Commonwealth v. Huffman*, 58 Luz. 175 (1968); *Commonwealth v. Dyer*, 40 Northumb. L.J. 140 (1967); *Commonwealth v. DeSanzo*, 40 D. & C. 2d 157 (1966); *Commonwealth v. Dunn*, 35 D. & C. 2d 50, 13 Chest. 1 (1964); *Wigham License*, 33 D. & C. 2d 253 (1963); *Commonwealth v. Gmuer*, 29 D. & C. 2d 689 (1962).

After a careful review of these cases and of the case before us, we must agree with the cases which have held that knowledge is an important element in a §626 case. We must differ with them, however, as to the burden of proof.

Certainly, a court must be willing to consider the element of knowledge when deciding a §626 suspension case. If the court were to disregard substantial evidence that a vehicle owner had no knowledge that an individual was not legally capable of operating his vehicle, and had no reason to know that such might be the case, then to find him in violation of §626 might result in both an injustice and an absurd result.

On the other hand, the Commonwealth has a vital interest in preventing drivers from operating motor vehicles when they have no legal right to do so. And, to aid the Commonwealth in promoting this interest, every motor vehicle owner must make a genuine effort to assure himself that he authorizes only those persons possessing valid operating privileges to operate his motor vehicle. It is not unreasonable, therefore, to require that a motor vehicle owner charged with a violation of §626 bear the responsibility of showing that he had no knowledge, and no reason to know, that the operator of his vehicle lacked an operator's license, if that is his defense. The Commonwealth, of course, still has the initial burden of proving that the appellant had control over the vehicle, that he did authorize the operator to drive it, and that the operator did not in fact have

a valid license to operate the vehicle at the time in question.

Applying these standards to the instant case, we must affirm the decision of the court below.

Our scope of review, of course, is limited.

"In appeals of this nature our duty is to examine the testimony to determine whether the findings of the court below are supported by competent evidence and to correct any erroneous conclusions of law, and the action of the lower court will not be disturbed on appeal except for manifest abuse of discretion." *Yockers v. Department of Transportation,* 4 Pa. Commonwealth Ct. 95, 99-100, 285 A. 2d 893, 896 (1972); *Commonwealth v. Pison,* 2 Pa. Commonwealth Ct. 522, 524, 279 A. 2d 84 (1971).

The Commonwealth had presented sufficient testimony, however, to indicate that there had been a violation of §626, and Jenks had testified as to why she believed that Konkenski had a legal right to operate a motor vehicle. When the lower court expressly stated, however, that it did not believe her testimony, we are bound by that holding even though we might have taken a different view of the testimony as presented. It is the lower court's duty to decide on the credibility of witnesses, and although we might note that the court's gratuitous statements regarding the relationship between Jenks and Konkenski were totally without support in the record, we cannot here find that the court abused its discretion in refusing to believe the Jenks' testimony. It had the opportunity to see her and to hear her and to weigh her responses to the questions asked, while we did not.

Because Jenks has failed to show, therefore, that she had no knowledge of and had no reason to know that Konkenski had no legal right to operate her motor vehicle, and because she nevertheless permitted him to

operate it, we must affirm the order of the Court of Common Pleas of Montgomery County and hold that her operator's license was validly suspended.