Commonwealth *v.* Stamoolis.

Argued November 2, 1972, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

618

*Stuart A. Liner,* Assistant Attorney General, with him *Anthony J. Maiorana,* Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for appellant.

*G. Daniel Carney,* with him *Thorp, Reed & Armstrong,* for appellee.

OPINION BY JUDGE BLATT, December 5, 1972:

This is an appeal by the Department of Transportation (Department) from a decision of the Court of Common Pleas of Erie County restoring motor vehicle operating privileges to Gus Stamoolis (licensee). We believe that this decision of the court below should be affirmed.

The facts, as found by the court below, are that the licensee was operating his automobile on a winding and unfamiliar road at approximately 1:00 a.m. when he struck a rock in the road, lost control of the steering, and hit two brick pillars. Because the road was narrow at this point, the licensee's automobile was in a position blocking oncoming traffic. He attempted, therefore, to pull off the roadway and to park, but found that the nearest spot available for parking was approximately one and one-quarter miles from the scene of the accident. Within minutes after parking the car at this spot, the licensee was approached by persons identifying themselves as neighbors who had witnessed the accident. They informed him that they had notified the police, and he told them that he would remain where he was until the police arrived, which he did.

An information was filed before a local magistrate charging the licensee with leaving the scene of an accident, and the licensee subsequently paid a fine and costs in the amount of $30.00. A hearing was thereafter held by the Department and, pursuant to §618(b)(2) of The Vehicle Code, Act of April 29, 1959, P. L. 58, as amended, 75 P.S. §618(b)(2), the licensee's operator's license was suspended for two months for an alleged violation of §1027(d) of The Vehicle Code, 75 P.S. §1027(d).[1] The licensee appealed this suspension to the court below, which properly heard the matter de novo. *Commonwealth v. Silverman*, 2 Pa. Commonwealth Ct. 538, 279 A. 2d 83 (1971); *Appeal of Horvath*, 1 Pa. Commonwealth Ct. 353, 274 A. 2d 776 (1971). The court below concluded that the imposition of a suspension in this case was an abuse of discretion and also that "[t]here is a serious question as to whether the defendant was even technically guilty of violation of Section 1027(d) of the Vehicle Code." The court below reversed the suspension, and the Department appealed to this Court.

Section 1027 of The Vehicle Code was intended to deal with a very real problem—the hit-and-run driver.

---

[1] "The operator of any vehicle . . . which is involved in an accident with any vehicle or property which is unattended, shall immediately stop, and shall then and there either locate and notify the operator or owner of such unattended vehicle, or the owner or custodian of such unattended property, of the name and address of the operator and owner of the vehicle involved in such accident with the unattended vehicle or property, or shall leave in a conspicuous place, in or upon the unattended vehicle or property, a written notice, giving the name and address of the operator, and of the owner of the vehicle involved in such accident, and a statement of the circumstances thereof, and also shall, within twenty-four (24) hours, forward to the department a similar notice regardless of the amount of damage done to such unattended vehicle or property."

As a means of protecting individuals who have suffered injury to their persons or to their property, it very properly requires the offending driver to make his identity known to the injured person or property owner and to notify the police as well. The section is obviously aimed at those drivers who attempt to flee the scene of an accident in which they have been involved without making known their identity, thus seeking to evade their responsibilities, either criminal or financial, or both.

A driver, for example, who backs quickly away from an accident for a considerable distance, although there was ample parking space in the immediate area, has been held to evidence an intent to leave the scene of an accident and is in violation of §1027. *Commonwealth v. Lightner*, 92 Dauph. 110 (1969). On the other hand, a driver who strikes a utility pole at 2:00 a.m., is unable to rouse any neighbors, and returns home before phoning the police, has been held to evidence an intent to identify himself to the owner of the property involved and is in substantial compliance with the statute. *Commonwealth v. Yarian*, 40 D. & C. 2d 244 (1966).

It is clear, therefore, that §1027(d) should not be so narrowly and technically construed so as to reach an absurd result. *Cf. Commonwealth v. Fisher*, 6 Pa. Commonwealth Ct. 159, 293 A. 2d 644 (1972). And, when a driver is involved in an accident, especially a minor one, it is only reasonable that he should attempt to pull off the road and park so that he may inspect the damage. This is especially true when to remain on the highway would block oncoming traffic and possibly cause another accident. Thus, on the facts of the instant case: (1) an accident in the early morning hours apparently causing minor damage to property (there were no figures introduced as to the extent of

damage to the pillars); (2) an accident on a narrow winding road with which the driver was unfamiliar; (3) an attempt to park at the first available safe spot; and (4) the immediate notification of the police and, presumably, of the property owner, it was not unreasonable that the court below should find the driver to have been in substantial compliance with §1027(d).

Our scope of review in such a situation, of course, is limited.

"In appeals of this nature our duty is to examine the testimony to determine whether the findings of the court below are supported by competent evidence and to correct any erroneous conclusions of law, and the action of the lower court will not be disturbed on appeal except for manifest abuse of discretion." *Commonwealth v. Jenks*, 6 Pa. Commonwealth Ct. 546, 551, 296 A. 2d 526 (1972); *Yockers v. Department of Transportation*, 4 Pa. Commonwealth Ct. 95, 99-100, 285 A. 2d 893, 896 (1972); *Commonwealth v. Pison*, 2 Pa. Commonwealth Ct. 522, 524, 279 A. 2d 84 (1971). The lower court stated that it was impressed by the licensee's credibility and that there was no rebuttal testimony on the point that he had stopped at the first available spot on the highway. It was the lower court's duty to determine credibility, and, given its findings, there clearly appears to have been substantial evidence on which the court could have based its decision that the licensee had substantially complied with §1027(d) and was not attempting to avoid any of his responsibilities thereunder.

The Department has raised an additional issue in its claim that the court below erred as a matter of law in considering the economic problems which license suspension would work on the licensee. It is certainly true that the lower court may not reverse the Department's suspension solely on the ground of economic hardship.

*Commonwealth v. McCartney,* 2 Pa. Commonwealth Ct. 540, 279 A. 2d 77 (1971) ; *Commonwealth v. Pison, supra.* In this case, however, the lower court's only allusion to economic hardship was a finding of fact as to the number of miles the licensee drives per year, and there was no indication that this fact was an important ground, let alone the sole ground, for the court's final decision.

For the reasons stated above, the order of the lower court is affirmed.