## Commonwealth v. Wetmore

*Arthur B. Siegel*, of *Finan, Beecher, Wagner & Rose*, for appellant.

*Patrick J. Lavelle, Special Assistant Attorney General,* contra.·

MARSH, *J.*, September 17, 1974—On February 6, 1974, at approximately 7:30 p.m., appellant was involved in a one-car automobile accident in which the automobile he was operating collided with a telephone pole off the road. The pole was severed and no persons were around in custody of the property. It was winter in a rural area of the Commonwealth, a secondary, macadam, two-lane road. Appellant states that he swerved off the road to avoid hitting two deer that were on the road; that he proceeded from the scene to his home which was located approximately 2000 feet (also stated it was a quarter of a mile) beyond the place of accident. He stated that he was bleeding, that he stopped the bleeding and knew nothing until the following morning. All of this testimony is of necessity uncontested because there was no other person in the area.

The following morning he telephoned the Bell Telephone Company and told them that he had severed their pole and then called the Pennsylvania State Police to advise them of the accident.

Appellant was covered by insurance for property damage.

The Pennsylvania State Police instructed him to come to the police headquarters, which he did; told them his story and was issued a citation for violation of section 1027(d) of The Vehicle Code of April 29, 1959, P.L. 58, as amended, 75 PS §1027.

He paid the fine and costs by mail and subsequently the Bureau of Traffic Safety suspended his operator's privileges for a period of four months

under section 618(b)(2). The notice of withdrawal of the motor vehicle privileges was mailed to him on June 26, 1974. This appeal followed and was a supersedeas.

Appellant alleges that the secretary abused his discretion in withdrawing his operating privileges and, in addition thereto, sets forth the hardship that he commutes approximately 70 miles per day round trip to and from his work as an engineer on the Erie Lackawanna Railroad. Although not specifically in the evidence, the court notes that there is a lack of available public transportation.

Appellant states that he did not realize that he could lose his license by virtue of paying the fine and costs and states that he did so because the matter happened and he just did it to get rid of the action.

The brief of the Commonwealth correctly states the principles involved when they set forth: "Notification to owner of the property and notice to the Department within the requisite time have been construed by the courts to require substantial, not precise compliance.": citing Commonwealth v. Burke, 61 Luz. 275 (1971); Commonwealth v. Stamoolis, 6 Pa. Commonwealth Ct. 617 (1972).

The court is not unmindful that on single-car violations there exists the great potential of a person who may be intoxicated driving on home, sobering up and then, when he is in better condition to be noble, report his accident. Therefore, the court does not treat this section lightly. However, in this case the Commonwealth has made no suggestion of any reason for the delay in notification and had been advised continuously throughout the transactions that appellant had been visiting with his wife at the hospital on that very evening and was returning from that visitation when the accident occurred.

The court is also mindful of the fact that in nearly all single automobile violations it seems that the driver was seeking to avoid striking a deer or other animals or a vehicle that failed to stop, thus causing the police and the court, if adjudicated, to be subject to a certain amount of "leg pulling." However, in a matter this serious to citizens, particularly in a rural area where public transportation is scant, if any, the suspension of operating privileges must be based upon something more than the belief that the appellant may be fabricating a story.

Considering the nature of the accident, the lack of personal involvement with other persons, the alleged injuries to appellant, the ownership of a telephone pole by a legal entity which has uniform daytime business hours and the promptness of notification on the following morning, the court believes that the secretary abused his discretion on these particular facts in suspending the motor vehicle privileges of appellant.

## ORDER

And now, September 17, 1974, the suspension of the operating privileges of Henry Wetmore, Jr., dated June 26, 1974, by the Director of the Bureau of Traffic Safety is reversed.