582 A.2d 734

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, for the Use of Casey MOLEK**

v.

**Virginia HICKEY and Erie Insurance Company.**

**Appeal of COMMONWEALTH of Pennsylvania, DEPART-MENT OF PUBLIC WELFARE, Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 12, 1990.
Decided Nov. 19, 1990.

Jason W. Manne, Asst. Counsel, Pittsburgh, for appellant.

Anthony V. Cortese, with him, Gilbert S. Solomon, Gilbert S. Solomon & Associates, Pittsburgh, for appellees.

Before DOYLE and COLINS (P.), JJ., and BARRY, Senior Judge.

## OPINION

BARRY, Senior Judge:

The Department of Public Welfare (DPW) appeals an order of the Court of Common Pleas of Allegheny County which sustained the preliminary objections of the defendants, Virginia Hickey and the Erie Insurance Company (Erie), and dismissed DPW's complaint.

In its complaint, DPW alleges the following facts. In June of 1989, William Lloyd was involved in an automobile accident and was killed. He was driving Ms. Hickey's car at the time with her permission. Mr. Lloyd, who was not licensed to drive in Pennsylvania, was operating the automobile while intoxicated when he drove the wrong way on a one-way street and hit an oncoming truck.

Mr. Lloyd was also alleged to be the father of Casey Molek, a minor child who is receiving public assistance from DPW.[1] Because of the loss of her father's support due to his death, DPW sued Ms. Hickey and Erie, her automobile insurer, for damages for the use of the minor child. Both defendants filed preliminary objections, alleging that the complaint failed to state a cause of action. The trial court sustained the demurrers and dismissed the complaint against each of the defendants. DPW has appealed to this Court.

DPW bases its claim upon 75 Pa.C.S. § 1574 which provides:

(a) General Rule.—No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this chapter or who is not licensed for the type or class of vehicle to be driven.

[1]. In considering preliminary objections, the allegations in DPW's complaint must be accepted as true.

(b) Penalty.—Any person violating the provisions of subsection (a) is guilty of a summary offense and shall be jointly and severally liable with the driver for any damage caused by the negligence of such driver in operating the vehicle.

DPW argues that Section 1574 requires us to hold that Ms. Hickey can be held liable for the damage that Mr. Lloyd caused to himself as a result of his own negligence. We cannot so read Section 1574.

As in all cases of statutory interpretation, our function and duty is to determine the Legislature's intent. One thing is clear; the Legislature has decided that in some circumstances, one who permits an unlicensed driver to drive his car upon the highways can be financially responsible for the actions of that unlicensed driver. The more difficult question is determining in which circumstances the Legislature intended to impose liability.

To answer this question, we believe it best to look at the various possibilities. In this regard, we believe Section 1574 can be read in one of three ways. First, and as urged by DPW, the Legislature could have intended to impose "strict liability" upon an owner for the actions of the unlicensed driver. Second, Section 1574 could be read as imposing "vicarious liability" on that owner. Finally, Section 1574 could be seen as a statute imposing "negligence per se". A brief discussion of each of these concepts is thus in order.

Professors Prosser and Keeton have described strict liability as "liability without fault". W. Prosser and W. Keeton, The Law of Torts, 75 (5th ed. 1984) (hereinafter "Prosser"). Strict liability has been imposed, for example, in the areas of workmen's compensation, products liability and where one is involved with abnormally dangerous enterprises. As a general rule, strict liability involves policy judgments that one who engages in certain activity will be financially responsible to those injured by such activity.

Vicarious liability has been described in Prosser as follows:

A is negligent, B is not. 'Imputed negligence' means that, by reason of some relation existing between A and B, the negligence of A is to be charged against B, although B has played no part in it, has done nothing whatever to aid or encourage it, or indeed has done all he can possibly do to prevent it. The result may be that ... B, in C's action against him, becomes liable as a defendant for C's injuries, on the basis of A's negligence. This is sometimes called imputed negligence. More often than not it is called vicarious liability, or the principle is given the Latin name of *respondeat superior.*

*Id.* at 69. The most common example of vicarious liability is the responsibility of a master for the negligence of his or her servant.

Prosser explains the difference between strict liability and vicarious liability.

Since B himself is free from all fault, when he is liable to C it is in one sense strict liability. In another it is not. The foundation of the action is still in negligence, or other fault, on the part of A; and all the law has done is to broaden the liability for that fault by imposing it upon an additional, albeit innocent, defendant. It is still an action for negligence, and the ordinary rules of negligence liability are still applied to it.

*Id.* (footnotes omitted). Put another way, if A's actions are such that he is liable to C for his or her actions, B can also be held liable.

 There is also the concept of "negligence per se". To recover on a theory of negligence, the plaintiff must prove (1) that the defendant owed a duty to the plaintiff, (2) that the defendant breached that duty, (3) that the breach of duty was the "proximate" or "legal" cause of the accident and (4) the plaintiff suffered an actual loss or damage. Prosser at 30. We have held that a statute may establish a duty and failure to obey the statute further establishes the required breach of duty; when applicable, proof of violation of a statute constitutes "negligence per se". It is well settled, however, that having proven "negligence per se", a

plaintiff cannot recover unless it can be proven that such negligence is the "proximate" or "legal" cause of the injury. *Kaplan v. Kaplan*, 404 Pa. 147, 171 A.2d 166 (1961); *Vernon v. Stash*, 367 Pa.Superior Ct. 36, 532 A.2d 441 (1987). Causation is a question of fact to be determined by the fact finder. *Ford v. Jeffries*, 474 Pa. 588, 379 A.2d 111 (1977). Only if the facts are not in dispute and thus reasonable minds cannot differ can the question be removed from the consideration of the fact finder, since then there is only a question of law to be decided. *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978).

▮ As previously mentioned, our function and duty is to determine what the Legislature intended when it passed Section 1574. We believe that Section 1574 shows a legislative intent to make one who permits his or her auto to be used by an unlicensed driver vicariously liable for acts of the unlicensed driver.

We must first reject DPW's argument that Section 1574 imposes strict liability. We believe that if the Legislature had intended such a system, the legislative action would have been valid and enforceable. As already mentioned, strict liability is often associated with abnormally dangerous activities or things, such as the ownership of wild animals. In an area of the law related to the instant controversy, the Superior Court of Pennsylvania has explicitly stated that "[a]n automobile is not regarded as a dangerous instrumentality...." *Chamberlain v. Riddle*, 155 Pa.Superior Ct. 507, 510, 38 A.2d 521, 523 (1944). Furthermore, the Supreme Court had held under a predecessor to Section 1574 [2] that proof of permitting an unlicensed driver to operate one's vehicle does not alone establish the requisite causal connection to an accident. *Scorsini v. Pittsburgh Provision & Packing Co.*, 272 Pa. 253, 116 A. 154 (1922). *Accord Chamberlain.* We believe that if the

**2.** All of Section 1574 predecessors made it illegal for an owner of a vehicle to permit an unlicensed driver to operate the vehicle. Section 1574, however, is the first explicit legislative pronouncement that the owner will be civilly liable for violating its provisions.

Legislature had intended to create strict liability, an obvious departure from established case law, it would have done so in a manner that its intention would be absolutely clear.

We also do not believe that Section 1574 can be interpreted merely to create negligence per se. The predecessors to Section 1574 made it a violation to give one's car to an unlicensed driver; none said anything about civil liability. In cases involving the predecessors, the courts conceded that violation of the statute was negligence per se but required establishment of causal connection.[3] We must attribute some effect to the Legislature's additional provision concerning civil liability. Were Section 1574 merely to be interpreted as creating negligence per se, and no more, we would be ignoring the Legislative intent.

By process of elimination, therefore, it seems to us that the Legislature has intended to establish a system of vicarious liability. Our decision on the question of the Legislature's intent does not finally resolve the question of whether the trial court was correct in sustaining the demurrers. Since we have determined that Ms. Hickey is vicariously liable for Mr. Lloyd's actions, she is, therefore, responsible just as Mr. Lloyd would be to the plaintiff. As we do not believe that Mr. Lloyd's minor child could have recovered in a wrongful death action against Mr. Lloyd alone, we believe that no liability can be imposed against Ms. Hickey under a theory of vicarious liability.

 The parties agree that this is a wrongful death action with Mr. Lloyd's minor child suing for the loss of her father's support. We do not believe that a child may

---

**3.** In *Laubach v. Colley*, 283 Pa. 366, 129 A. 88 (1925), the Court held that permitting an unlicensed driver *who is under the legal age to be licensed* establishes the requisite causal connection. It is obvious that *Laubach* was decided on the basis of negligent entrustment, i.e., permitting one who is incompetent to drive to operate one's vehicle. In the present case, had Ms. Hickey loaned the car to Mr. Lloyd knowing that he was a habitual drunkard, Ms. Hickey could have been found liable on the basis of this independent tort. No such allegation has been made by DPW, even after the trial court gave it an opportunity to amend its pleadings to make appropriate new allegations.

recover for the wrongful death of a parent where the deceased parent was responsible for one hundred percent of the causal negligence in the accident. 42 Pa.C.S. § 8301 states that an "action may be brought to recover damages for the death of an individual *caused by the wrongful act or neglect or unlawful violence of another* if no action for damages was brought by the injured individual during his lifetime." (Emphasis added). Simply put, there is no "other" apart from the "injured individual" who could be responsible for the damages caused. Furthermore, before the Legislature adopted a system of comparative negligence in 42 Pa.C.S. § 7102, the law was clear that the contributory negligence of a decedent was an absolute bar to a wrongful death action based upon the decedent's death. *Allison v. Snelling and Snelling, Inc.*, 425 Pa. 519, 229 A.2d 861 (1967). With the adoption of Section 7102 of the Judicial Code, contributory negligence no longer operates as a complete bar to recovery on the part of the individual who is contributorily negligent. Nevertheless, that negligence had to be considered in accordance with the provisions of 42 Pa.C.S. § 7102 which provides:

> In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative *where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is being sought,* but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff. (Emphasis added).

As Mr. Lloyd's actions were the only causal negligence involved in this accident, no recovery can be had by the decedent's minor child, or DPW suing in her behalf.[4]

Affirmed.

---

**4.** We note that the result may very well be different if independent negligence on the part of Ms. Hickey or any other possible defendant was involved. As the pleadings here show, however, the only negli-

ORDER

NOW, November 19, 1990, the order of the Court of Common Pleas of Allegheny County, dated September 21, 1989, at GD No. 89–10804 is affirmed.

DOYLE, Judge, concurring.

I concur in the result because the complaint of the Department of Public Welfare (DPW) contained no allegation that the defendant, Virginia Hickey, either knew or had reason to know that William Lloyd was an unlicensed driver; and as made clear in the opinion of the trial court, when the "Court informed plaintiff's counsel that leave to amend would be granted, counsel informed the Court that he did not wish to amend the Complaint."

Section 1574(b) of the Vehicle Code, 75 Pa.C.S. § 1574(b), became effective on July 1, 1977 as part of a major revision of the former Vehicle Code[1] and added explicit liability where the statute had been silent before. I agree with the argument of DPW, therefore, that Section 1574(b) was intended to overcome the need to establish proximate causation. I do not agree, however, with the argument which advances strict liability and suggests that it is not necessary that the owner know that the driver is unlicensed.

The Superior Court in *Chamberlain v. Riddle*, 155 Pa.Superior Ct. 507, 511, 38 A.2d 521, 523 (1944) wrote:

In some states the owner is considered negligent, per se, when permission to operate a car is given to a person forbidden by law, if harm ensues from the carelessness of the operator, but in this state it has generally been held that a violation of a statute will allow a recovery by the plaintiff "only where such violation was the proximate or an efficient or 'legal' cause of the accident—that is, in the language of the Restatement—Torts—when the actor's

gence pled was Mr. Lloyd's act of driving the wrong way down a one way street while intoxicated.

1. Act of April 29, 1959, P.L. 58, *as amended, formerly,* 75 P.S. §§ 101–1503, *repealed by* Section 7 of The Vehicle Code, Act of June 17, 1976, P.L. 162.

conduct was 'a substantial factor in bringing about the harm.'

In my opinion Section 1574(b) of the Vehicle Code thus "supplies" the proximate causation by statute; that is to say, it shifts the focus from the negligence of the unlicensed driver to the negligence of the owner of the automobile who is deemed negligent for permitting the unlicensed driver to have the car, thereby causing injury to others. In this case, that injury would include Casey Molek. It would still be necessary, however, for the owner to know or have some reason to know, that the unlicensed driver was indeed unlicensed. The statute, by legislative fiat, considers the unlicensed driver incapable of driving precisely because he does not have a license, and further considers that the person who allowed that unlicensed driver to drive, thus causing injury to others, is negligent per se.