637 A.2d 650

**Ronda BURKHOLDER**

v.

**GENWAY CORPORATION and Pollow Chevrolet, Inc., Formerly Known as Pollow Auto Leasing, Inc.**

**Appeal of POLLOW CHEVROLET, INC., f/k/a Pollow Auto Leasing, Inc.**

Superior Court of Pennsylvania.

Argued Nov. 17, 1993.

Filed Feb. 22, 1994.

38

William F. Sweeney, Philadelphia, for appellant.

Frank J. Wesner, Jr., Media, for Burkholder, appellee.

Michael R. Bradley, Media, for Genway, appellee.

Before CIRILLO, FORD ELLIOTT and BROSKY, JJ.

CIRILLO, Judge:

Pollow Chevrolet, Inc. ("Pollow") appeals from an order of the Court of Common Pleas of Delaware County denying Pollow's post-trial motions and entering judgment for plaintiff, Ronda Burkholder, in the amount of $1,342,089.62 and against defendants James J. Scanlon, Jr. (Scanlon), Harvco, Inc. (Harvco), and Pollow, jointly and severally. We reverse.

The facts adduced at trial are as follows: On November 20, 1985, Pollow entered into a written agreement to lease a 1986

Chevrolet El Camino (subject vehicle) to Harvco. The agreement was signed by Scanlon, as the President of Harvco, and was the third such lease entered into between Harvco and Pollow. At the time the first lease was entered into, Scanlon produced a valid Delaware driver's license. At the time the third agreement was consummated, however, Pollow did not ask Scanlon to produce his license which, unbeknownst to Pollow, had been suspended.[1]

On August 20, 1988, Scanlon, while operating the subject vehicle, drove through a red light and struck a car in which Ronda Burkholder was a passenger. As result of this accident, Burkholder sustained serious injuries. Burkholder initiated suit against Scanlon, Harvco, and Pollow. Prior to trial, the parties stipulated that: 1) Scanlon and Harvco admit liability for the accident in question; 2) on November 20, 1985, Pollow and Harvco entered into a written lease for the subject vehicle, which was signed by Scanlon on behalf of Harvco; 3) when the November 20, 1985 lease was signed, Scanlon did not have a valid driver's license; and 4) at the time of the accident, Scanlon's Pennsylvania driver's license had been revoked and his Delaware license suspended.

On June 16, 1992, a non-jury trial was held before the Honorable Joseph F. Battle. The only issues considered at trial were whether Pollow, as lessor of the subject vehicle, was liable for the injuries caused to Burkholder and the amount of damages. At the close of trial, Judge Battle entered judgment in favor of Burkholder and against all defendants for $1,500,000.00. Judge Battle so ruled primarily because he found that 75 Pa.C.S.A. § 1574 imposed vicarious liability on anyone who authorizes an unlicensed individual to drive a vehicle owned or controlled by the authorizing party, and that, necessarily, Pollow authorized Scanlon to drive the subject vehicle. Post-trial motions were filed by Pollow and denied. On May 24, 1993, Judge Battle amended his opinion and order

1. Scanlon's driver's license had been suspended for failure to pay fines related to moving violations.

and entered judgment for Burkholder in the amount of the molded verdict, $1,342,089.62. This appeal followed.

Pollow raises the following issues for our review:

I. Whether 75 Pa.C.S.A. § 1574 requires that an owner "knowingly" allow an unlicensed driver to operate the owner's motor vehicle in order to hold the owner vicariously liable for the torts of the unlicensed driver?

II. Whether it was erroneous for a franchisee of a leasing company to be held liable under 75 Pa.C.S.A. § 1574 when it had negotiated a lease with a corporation three years before the accident date and the lessee corporation thereafter permitted an employee whose license had been suspended to use the vehicle?

III. Whether the court sitting without a jury impermissibly received into evidence plaintiff's vocational rehabilitation expert's report over the objection of appellant that the report was speculative and did not contain a proper factual predicate?

IV. Whether the application of 75 Pa.C.S.A. § 1574 to the franchisee of a lessor of a motor vehicle under a long term bailment lease is violative of the U.S. Constitution when there is no means by which lessor can verify the active status for an otherwise apparently valid driver's license?

Pollow first argues that the trial court erred in concluding that 75 Pa.C.S.A. § 1574 holds a person, who permits a vehicle under his control to be driven by an unlicensed driver, vicariously liable for the negligent conduct of that driver. Specifically, Pollow claims that section 1574 requires that the authorizing party "know" or have "reason to know" that the other party is an unlicensed driver before the authorizing party can be held liable for the driver's conduct. Our initial task, therefore, is to determine what culpability requirement, if any, the statute requires.

Section 1574 is silent as to its culpability requirement. The statute states:

(a) **General rule:** No person shall authorize or permit a vehicle owned by him or under his control to be driven upon

any highway by any person who is not authorized under this chapter or who is not licensed for the type or class of vehicle to be driven.

(b) **Penalty:** Any person violating the provisions of subsection (a) is guilty of a **summary offense** and shall be jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle.

75 Pa.C.S.A. § 1574.

When a statute does not prescribe the degree of culpability needed for a conviction under a summary offense, we will impose a culpability standard only if we determine "that [the standard's] application is consistent with effective enforcement of the law defining the offense." 18 Pa.C.S.A. § 305(a)(1). To facilitate such a determination in the case at hand, it is helpful to analyze case law reviewing section 1574 and its predecessors.

In *In re Moyer*, 359 Pa. 536, 59 A.2d 927 (1948), the Pennsylvania Supreme Court was asked to determine whether the Secretary of Revenue properly suspended Moyer's motor vehicle license under Section 622 of Art. VI of the Vehicle Code of May 1, 1929, after Moyer had lent his vehicle to an unlicensed driver. This provision, the first version of section 1574 enacted in this Commonwealth, made it unlawful for one "to authorize or permit a motor vehicle owned by him or under his control to be operated by any person who has no legal right to do so." *Id.*

In finding that the Secretary of Revenue did not properly suspend Moyer's license, the Supreme Court imputed a "knowledge/reason to believe" requirement into the statute. Thus, the Supreme Court found that as Moyer "had no knowledge or reason to believe that the license [of the operator of his motor vehicle] had been revoked," he did not violate any provision of the Vehicle Code. *Id.*

Similarly, in *Jenks v. Commonwealth Dept. of Transp., Etc.*, 6 Pa.Commw. 546, 296 A.2d 526 (1972), the Commonwealth Court considered whether Joan Jenks properly had her license suspended under 75 P.S. § 626 (1959), after loaning her vehi-

cle to an unlicensed driver. This provision, another predecessor of section 1574, provided: "No person shall authorize or permit a motor vehicle or tractor owned by him or under his control to be operated by any person who has no legal right to do so . . . ." *Id.*

After discussing a split in authority regarding the "knowledge" requirement, the Commonwealth Court announced:

> Certainly, a court must be willing to consider the element of knowledge when deciding a § 626 suspension case. If the court were to disregard substantial evidence that a vehicle owner had no knowledge that an individual was not legally capable of operating his vehicle, and **had no reason to know** that such might be the case, then to find him in violation of § 626 might result in both an injustice and an absurd result.

*Id.* (emphasis added). Thus, the court found that in such cases, the motor vehicle owner has the burden of proving that "he had no **knowledge, and no reason to know,** that the operator of his vehicle lacked an operator's license." *Id.* (emphasis added).

Next, in *Commonwealth v. Hickey,* 136 Pa.Commw. 223, 582 A.2d 734 (1990), the Commonwealth Court had occasion to examine section 1574 itself. Specifically, the Commonwealth Court considered whether the statute imposed strict liability, vicarious liability, or negligence per se. After examining the basic tenets of the three forms of liability, the court held that "section 1574 shows a legislative intent to make one who permits his or her auto to be used by an unlicensed driver vicariously liable for acts of the unlicensed driver." *Id.* at 228, 582 A.2d at 736. Significantly, in reaching this conclusion, the court did not have pause to discuss whether the statute imposed a "knowledge" requirement concomitant to vicarious liability.[2]

2. In *Hickey,* we believe that the court did not reach the "knowledge" issue, because it found that as the victim could not recover from the unlicensed driver, the owner of the vehicle could not be held vicariously liable.

The concurrence in *Hickey*, however, did find that section 1574 includes a "knowledge" requirement. The concurrence stated:

It would still be necessary, however, for the owner to know or have some reason to know, that the unlicensed driver was indeed unlicensed. The statute, by legislative fiat, considers the unlicensed driver incapable of driving precisely because he does not have a license, and further considers that the person who allowed that unlicensed driver to drive, thus causing the injury to others, is negligent per se.

*Id.* at 232, 582 A.2d at 738.

Finally and most recently, in *Gade v. Csomos*, 8 F.3d 137 (3rd Cir.1993), the Third Circuit was asked to determine whether under section 1574 a leasing company, without knowing or having reason to know that the lessee of the vehicle had his license suspended,[3] was nonetheless liable for the negligent driving of the lessee. After reviewing the relevant precedent, the Third Circuit concluded that the Pennsylvania Supreme Court would find that the lessor must "know" or "have reason to know" that the lessee was unlicensed in order to be liable under the statute.

After reviewing this precedent, we conclude that the legislature of this Commonwealth intended section 1574 to impose a "know" or "reason to know" culpability requirement. Thus, in order for one to be found liable under the statute, it must be shown that a person "knew" or had "reason to know" that the individual to whom he authorized to operate his vehicle did not have a valid driver's license.

Presently, therefore, we must determine whether Pollow knew or had reason to know that Scanlon did not have a valid driver's license when it entered into the third leasing agreement with Harvco. This task, although simple on its face, requires us to determine whether and to what extent section

---

**3.** The court noted that the lessor had asked for and received the lessee's driver's license number and that it had verified the lessee's insurance. The court concluded that since the lessee produced a driver's license, the lessor did not "know" or have "reason to know" that the lessee's license had been suspended.

1574 imposes a duty upon lessors in corporate leasing agreements to ascertain which employees will drive the vehicle and if these employees possess valid driver's licenses. To make this decision, it is necessary to revisit the statute and deduce the intention of the legislature.

It is well settled that in determining the meaning of a statute, "we are required to consider the intent of the legislature and are permitted to examine the practical consequences of a particular interpretation." *Commonwealth v. Elliott,* 410 Pa.Super. 354, 358, 599 A.2d 1335, 1337 (1991). When a statute's intent or meaning is ambiguous or capable of multiple interpretations, the intention of the legislature may be ascertained by considering the object of the statute and the consequences of a particular interpretation; "the court must presume that the legislature does not intend a result that is absurd or unreasonable." *Estate of Osborne,* 363 Pa.Super. 200, 210, 525 A.2d 788, 793 (1987).

In the case at hand, Burkholder invites us to conclude that because Pollow did not ask to see Scanlon's driver's license when it entered into the third leasing agreement with Harvco, Pollow had a "reason to know" that Scanlon did not possess a valid driver's license. In essence, therefore, Burkholder asserts that in enacting section 1574 the legislature intended to impose a duty on leasing companies such as Pollow, to inquire of its corporate customers which employees will be driving the leased vehicle and then to investigate whether those employees are licensed drivers. We decline to accept this invitation.

The purpose of section 1574 is to effectuate the Commonwealth's "vital interest in preventing drivers from operating motor vehicles when they have no legal right to do so." *Jenks,* 6 Pa.Commw. at 550, 296 A.2d at 529. In pursuit of such interest, the legislature prohibits motor vehicle owners from authorizing persons to operate their vehicles, who they know or have reason to know do not possess valid driver's licenses. Section 1574 does not, as Burkholder suggests, impose a duty upon lessors to divine who among the many employees of a company leasing the automobile possess valid

driver's licenses. To prescribe such a duty would produce absurd results and would strain the very limits of credulity.

Section 1574, on its face, decries such an interpretation. The statute states that "no person shall authorize or permit a motor vehicle owned by him or under his control to be driven" by any person who is an unlicensed driver. 75 Pa.C.S.A. § 1574(a). In leasing a vehicle to a corporation, a lessor simply transfers possession of the vehicle to the corporate lessee. From the moment the leasing agreement is consummated, it is the corporation, and not the lessor, who authorizes its employees to drive the vehicle, and it is the corporation, and not the lessor, therefore, who is potentially subject to section 1574 liability.

We will not countenance a result which imposes a duty on automobile leasing companies to predict which corporate employee will operate the vehicle and whether such employee has a valid driver's license. We think the corporation is far better equipped to shoulder such a burden. We find that in the context of leasing agreements between lessors and corporate entities, section 1574 imposes no duty upon the lessor to discover whether or not the corporate employee who operates the vehicle has a valid driver's license. As such, we find that the trial court committed reversible error in holding Pollow liable under section 1574. The trial court's order is hereby reversed.[4]

Order reversed.[5]

FORD ELLIOTT, J., files a concurring statement.

FORD ELLIOTT, Judge, concurring:

I write separately to note that I agree only in part with the rationale of the majority, and thus, will concur in part and join in part.

[4]. Because we find that Pollow is not subject to liability under section 1574, we do not reach Pollow's additional arguments.

[5]. Our judgment reversing the trial court's order in no way affects the judgment entered against Harvco and Scanlon.

46

My specific disagreement is with the majority's interpretation of 75 Pa.C.S.A. § 1574. The majority has chosen to insert a "know" or "reason to know" culpability requirement into the statute. While similar predecessor statutes have been interpreted by other courts of this Commonwealth to include such a "know" or "reason to know" culpability requirement, I am particularly troubled by the majority's decision to do so instantly. As noted by the parties, a review of the legislative history of § 1574 reveals that, as originally introduced, the legislature did, indeed, include this culpability requirement. However, and for whatever reason, the legislature chose to strike the word "knowingly" from the statute when the bill was reported from committee February 11, 1976. This is a clear indication to me that a "know" or "reason to know" culpability standard was considered and rejected.

I would additionally note, as a matter of policy, that to only attach liability to an owner or possessor of a vehicle who knowingly gives permission to an unlicensed driver is to relieve the responsible party under the statute of any obligation to make inquiry in the first instance. Clearly, the purpose of the statute was to protect the citizens of this Commonwealth from injuries caused by unlicensed drivers, and the obligation of determining the status of a driver must fall on the owner or possessor of the vehicle prior to authorization.

Still, I am nevertheless able to concur in the result and to join in the alternate holding of the majority. I agree with the interpretation that once the lessor has lawfully passed control of the vehicle to the lessee, the lessor is relieved of liability under the statute. Section 1574 was only intended to place liability upon one in control of the vehicle. Once the original owner-lessor has lawfully transferred possession, the owner-lessor can no longer be held liable for the action of those persons which the lessee improperly authorizes to operate the vehicle.

Instantly, the lessee is the corporate entity, Harvco, Inc., and it is Harvco which authorized Scanlon to operate the vehicle without a valid driver's license. Pollow did not autho-

rize Scanlon to operate the vehicle, and therefore no liability can be imposed upon Pollow under § 1574.