**Joseph M. and Eugenia M. FERRY, H/W,**

v.

**Clarence M. FISHER and Martin F. Ditommaso and All Star Motors, Inc.**

**Appeal of Martin F. DiTOMMASO and All Star Motors, Inc.**

Superior Court of Pennsylvania.

Argued Jan. 13, 1998.

Filed March 4, 1998.

Reargument Denied May 15, 1998.

David Karamessinis, Philadelphia, for appellants.

Larry R. McDowell, Philadelphia, for Joseph M. and Eugenia M. Ferry, appellees.

Before KELLY and MONTEMURO,* JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

Martin F. DiTommaso and All Star Motors, Inc., appeal the order entered in the Court of Common Pleas of Bucks County denying Appellants' post-trial motion, granting Appellees' motion for delay damages, and molding the jury verdict to impose joint and several liability among the Defendants. We reverse.

* Retired Justice assigned to the Superior Court.

1. While Fisher claimed that when he exited the car after the accident the roads appeared icy, the plaintiff testified that she did not notice that the road was slippery or slick at the time of the accident.

On February 13, 1992, Clarence Fisher, a New York resident, was involved in an automobile accident in Langhorne, Pennsylvania, when he was test-driving a used 1981 '98 Oldsmobile Regency owned by appellant All Star Motors ("ASM"). At the time of the accident, appellant Martin F. DiTommaso ("DiTommaso"), a salesman employed by ASM, was in the passenger seat of the car driven by Fisher. Fisher's cousin and uncle were also in the backseat of the car during the test drive and at the time of the accident.

At the time of the test drive a light rain was falling.[1] In an attempt to swerve and avoid hitting a car emerging from a hidden driveway, Fisher applied his brakes; he, however, skidded on the wet roadway, swerved into the oncoming lane of traffic, and ultimately impacted with an approaching car driven by plaintiff/appellee Eugenia M. Ferry ("Ferry").

Ferry[2] brought a personal injury action alleging various theories of negligence against Fisher, DiTommaso, ASM, and U.S. 1 Auto Sales.[3] After a jury trial, a verdict was rendered in favor of the Ferrys ($225,000.00 for Mrs. Ferry's injuries and $5,000.00 for Mr. Ferry's loss of consortium). The jury apportioned Appellants' causal negligence in the following amounts—Fisher 42%, DiTommaso 30%, and ASM 28%. The trial court also amended the Ferrys' complaint to reflect joint and several liability among the defendants. The verdict was eventually molded to assess delay damages and post-verdict interest, bringing Mrs. Ferry's total award to $264,397.50 and Mr. Ferry's final recovery to $5,875.50. After the trial court denied Appellants' post-trial motions, the instant appeal was filed. On appeal, Appellants present the following issues for our review:

(1) Did the Plaintiffs fail to produce sufficient evidence that the dealership and its

2. Mrs. Ferry sued for her personal injuries incurred in the accident and her husband, Joseph M. Ferry, brought a claim for loss of consortium.

3. A motion for non-suit was granted on behalf of defendant U.S. 1 Auto Sales in the underlying action.

salesman negligently entrusted their vehicle to a customer to testdrive?

(2) Did the Plaintiffs fail to produce sufficient evidence that an agency relationship existed between the dealership/salesman and the customer during the test drive?

(3) Did the trial court err in allowing the Plaintiffs to introduce evidence that the Defendant gave a statement to an insurance company?

(4) Did the trial court err in precluding the defense from introducing evidence that the customer had never had his driver's license revoked or suspended before the accident?

(5) Did the trial court err by failing to instruct the jury that the Defendants' failure to ask for a driver's license was not negligence?

(6) Did the trial court err in failing to give a cautionary instruction to the jury after prejudicial statements were made during Plaintiffs' summation?

(7) Did the trial court err in granting the Plaintiffs' motion to amend their complaint to plead joint and several liability against all Defendants after the jury verdict was rendered?

▪ Our standard of review of an order denying judgment notwithstanding the verdict is whether there was sufficient competent evidence to sustain the verdict. *Wenrick v. Schloemann–Siemag Aktiengesellschaft,* 523 Pa. 1, 4, 564 A.2d 1244, 1246 (1989). The standard of review for an appellate court is the same as that for a trial court: j.n.o.v. will be entered only in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Pirozzi v. Penske Olds–Cadillac–GMC Inc.,* 413 Pa.Super. 308, 605 A.2d 373 (1992). An appellate court will reverse a trial court ruling only if it finds an abuse of discretion or an error of law that controlled the outcome of the case. *Timbrook v. Foremost Ins. Co.,* 324 Pa.Super. 384, 387, 471 A.2d 891, 892 (1984).

▪ ASM and DiTommaso assert that the Ferrys failed to present sufficient evidence to prove that ASM and DiTommaso negligently entrusted their automobile to Fisher or that Fisher had an agency relationship with ASM and DiTommaso at the time of the accident.

▪ In reviewing the sufficiency of the evidence we are required to view the evidence in the light most favorable to the verdict winners. *Simonetti v. School District of Philadelphia,* 308 Pa.Super. 555, 562, 454 A.2d 1038, 1041 (1982), citing *Rubinstein v. J.E. Kunkle Co.,* 244 Pa.Super. 474, 480, 368 A.2d 819, 822 (1976). Viewing the evidence in light most favorable to the Ferrys, as verdict winners, we cannot find that either ASM or DiTommaso were negligent in the underlying case.

▪ To establish a viable cause of action in negligence, the pleader must aver in his complaint the following elements:

1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

2. A failure on the person's part to conform to the standard required: a breach of the duty.

3. A reasonably close causal connection between the conduct and the resulting injury.

4. Actual loss or damage resulting to the interest of another.

Prosser & Keeton on Torts, § 30 (5th ed.1984). *See also J.E.J. v. Tri–County Big Brothers/Big Sisters, Inc.,* 692 A.2d 582 (Pa.Super.1997) (the elements for a cause of action based on negligence are a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and an actual loss). Moreover, "the mere happening of an accident does not entitle the injured person to a verdict; plaintiff must show that defendant owed him a duty and that duty was breached." *Engel v. Parkway Co.,* 439 Pa. 559, 562, 266 A.2d 685, 687 (1970).

Presently, the trial court, in its opinion, responds to the Ferrys' first two issues on appeal by stating that

Plaintiffs alleged multiple theories of liability, only [two] of which w[ere] negligent entrustment [and agency]. They also al-

leged simple negligence. There was sufficient evidence at trial for the jury to have concluded that defendants should have not allowed Fisher to drive the car at the time and place of the accident. As there was sufficient evidence of defendants' negligence in this regard, a new trial is not warranted.

While the trial court is correct in acknowledging that the Ferrys' complaint did allege multiple theories of liability, the court seems to be overlooking the fact that a duty on the part of ASM and DiTommaso must first be found before these parties can be held liable under a theory of simple negligence. *Engel, supra.*

As a car dealership, it could be argued that ASM should have had a dealership policy whereby all persons, prior to taking a dealership car on a test drive, must produce evidence of a valid driver's license to a salesman. However, after viewing the facts in the instant case, we do not find that this is the appropriate time to create such a blanket duty on dealerships. Additionally, such a duty is inconsistent with the following well-settled principles of law established in this Commonwealth.

Section 308 of The Restatement (Second) of Torts defines the tort of negligent entrustment, which has been adopted in this Commonwealth, as follows:

§ 308. Permitting Improper Persons to Use Things or Engage in Activities

It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, **if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.**

Restatement (Second) of Torts § 308 (emphasis added); *Christiansen v. Silfies,* 446 Pa.Super. 464, 667 A.2d 396 (1995). Under a theory of negligent entrustment, liability is imposed upon a defendant because of his or her own actions in relation to the instrumentality or activity under his or her control. *Silfies,* 446 Pa.Super. at 472, 667 A.2d at 400. The entrustor's liability is not dependent on,

derivative of, or imputed from the entrustee's actual liability for damages. *Id.; see also* Restatement (Second) of Torts § 308.

Similar to the tort of negligent entrustment, our legislature has also imposed a statutory duty on automobile owners who entrust their cars to persons who are not licensed to drive. Specifically, our Commonwealth prohibits an automobile owner from "authorizing or permitting an automobile owned by him or under his control to be operated by any person without a valid driver's license." 75 Pa.C.S.A. § 1574. In order to violate the statute, however, it must be shown **that the owner knew or had reason to know that the individual to whom he or she authorized to operate his or her vehicle did not have a valid driver's license.** *See* 75 Pa.C.S.A. § 1574; *Burkholder v. Genway Corp.,* 432 Pa.Super. 36, 637 A.2d 650 (1994). *See also In re Moyer,* 359 Pa. 536, 59 A.2d 927 (1948) (a case where the supreme court imputed a "knowledge/reason to believe" requirement into section 1574; where owner did not have any knowledge or reason to believe that the license of the operator of his automobile had been revoked, owner did not violate any provision of the Motor Vehicle Code).

At trial DiTommaso testified that he did not ask Fisher for his driver's license before embarking on the test drive. It is undisputed, however, that at the time of the test drive and accident, Fisher was a licensed driver in the State of New York. Therefore, even if the dealership or its salesman had known or had reason to know that Fisher were unlicensed, such determination is irrelevant to the underlying case where Fisher held a valid New York driver's license. Furthermore, there is no evidence showing that either ASM or DiTommaso had reason to know or knew that Fisher was unlicensed. DiTommaso asserted at trial that he did not ask for Fisher's license because he was not yet "writing up the paperwork" for Fisher to purchase a car. According to DiTommaso, at the time an individual is ready to purchase a car, the salesperson then, as a matter of course, would normally ask a customer for proof of a valid driver's license. In certain cases, however, DiTommaso claimed that he

will ask a person for a license before test driving a car—such as when a customer looks very young or if a person looks particularly "shady." He, however, did not feel the need to do so in Fisher's case.

Other jurisdictions have acknowledged the fact that car salespeople allow prospective purchasers to take cars on test drives under very liberal terms. *See Federated Mutual Ins. Co., v. Lawson,* 217 Ga.App. 695, 458 S.E.2d 709 (1995); *see also Hartford Accident and Indemnity Co. v. Abdullah,* 94 Cal. Ct.App.3d 81, 156 Cal.Rptr. 254 (1979) (car dealership had a very loose policy about allowing their vehicles to be taken off the lot and driven by prospective customers). DiTommaso testified that at the time he took Fisher on the test drive he knew the following facts about Fisher: (1) that Fisher had come from New York; and (2) that Fisher was interested in buying a car. DiTommaso was not aware of any faulty mechanical conditions and no such defects were alleged with regard to the used 1981 '98 Oldsmobile Regency testdriven by Fisher. *Cf. Long v. Yingling,* 700 A.2d 508 (Pa.Super.1997) (appellant presented sufficient evidence as to whether appellee's used car dealership breached its duty to conduct a reasonable inspection of vehicle in order to ensure that it was in a reasonably safe condition before it was test driven by appellant). The route that DiTommaso chose for the test drive was a route he normally took on such drives with prospective customers. *See Reed v. Bennett,* 281 Pa. 332, 126 A. 764 (1924) (it is common for an employee of a car dealership to take an intending purchaser on a test drive to a locality that has not necessarily been designated by the employer).

We cannot find that ASM's and DiTommaso's knowledge or lack of knowledge of the conditions and circumstances surrounding the test drive caused Ferry's injuries. In a deposition,[4] Fisher testified that while he did not know what the speed limit was on the roadway where the accident occurred, he could not have been travelling more than 25 to 30 miles per hour. He was using his windshield wipers at the time of the test

drive; Mrs. Ferry, however, was not. Mrs. Ferry testified that the speed limit on the roadway was 35 miles per hour. DiTommaso asserted that he did not caution Fisher to slow down while he was driving because "he wasn't driving fast." DiTommaso also testified that the two dealerships where he had worked as a car salesman previously had not instituted any type of policy or formal procedure in order to take a customer on a test drive.

From the above facts, taken in the light most favorable to the Ferrys, we can find no affirmative evidence tending to prove that ASM knew or had reason to know that Fisher was either an incompetent or unfit driver or that ASM or DiTommaso breached a duty owed to the Ferrys. Accordingly, there could be no finding of negligence (whether based upon simple negligence or a negligent entrustment theory) on the part of ASM or DiTommaso. Furthermore, there is no evidence to prove that DiTommaso's failure to procure Fisher's license was the proximate cause of Ferry's injuries. *See Chamberlain v. Riddle,* 155 Pa.Super. 507, 38 A.2d 521 (1944) (an automobile owner's failure to secure a license of a person permitted to drive his or her car is not conclusive evidence of incompetence). In any event, Fisher was a licensed driver at the time of the accident, and, therefore, his license status had no effect on his ability to drive. Finally, there is no evidence to prove that DiTommaso's failure to inform Fisher of the posted speed limit was the proximate cause of the accident. Fisher testified that he was driving the speed limit and that there was plenty of distance between the two accident vehicles well before impact. Additionally, there was no evidence showing that the weather was so inclement that DiTommaso had breached his duty as a reasonable car salesman by allowing Fisher to take the car on a test drive. The weather was a light misty rain and the roads were slippery—conditions which are neither the type nor the degree that demand remaining off the roadways.

■ Finally, the fact that DiTommaso took Fisher, an out-of-state resident who was

---

4. Fisher did not testify at trial. His deposition testimony, however, was offered into evidence at

trial for purposes of being used as trial testimony.

unfamiliar with the area, on a test drive should not be considered a breach of his duty or responsibility as a used car salesman. It is readily recognized and common for persons to travel interstate or even intrastate (to unknown towns or cities) to buy large purchase items such as automobiles. It, therefore, is axiomatic that such persons would test drive a car (a large investment) before actually signing purchase papers. *See Reed,* 281 Pa. at 335, 126 A. at 764 (it is common for an employee of a car dealership to take an intending purchaser on a test drive in order to demonstrate and determine the car's fitness and condition).

From the above review of the case, we cannot conclude that either ASM or DiTommaso, in his individual capacity or as an agent for ASM, breached a duty or obligation, recognized by the law, that required them to conform to a certain standard of conduct for the protection of the Ferrys against Fisher's actions. *Tri–County, supra.* We, therefore, must reverse the decision of the trial court finding that ASM and DiTommaso were negligent. Where no duty or breach of a duty exists, we can impose no liability. *Engel, supra.*[5]

Order reversed.[6]

---

5. We also agree with appellant's claim that no agency relationship existed between Fisher and DiTommaso/ASM. An agency is created when there is a manifestation by a principal that an agent shall act for him, the agent's acceptance of the undertaking, and an understanding by the parties that the principle is to be in control of the undertaking. *Clayton v. McCullough,* 448 Pa.Super. 126, 130–32, 670 A.2d 710, 713–14 (1996) (passenger and driver of car had no agency relationship so that negligence of latter would be imputed to former). Furthermore, we cannot assume agency by merely showing that one person does an act for another. *Id.* at 132, 670 A.2d at 714. Here the facts show that DiTommaso, a first-time acquaintance of Fisher, permitted the latter to test drive a car owned by DiTommaso's employer, ASM. This factual scenario hardly presents sufficient evidence of any agency relationship between Fisher and DiTommaso. Fisher neither manifested the intent to act on DiTommaso's behalf nor did the parties come to any understanding that DiTommaso was in control of Fisher's actions.

6. Having determined that ASM and DiTommaso did not breach a duty to plaintiffs, we need not review the remaining issues of trial court error alleged by appellants.