J-S69008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT E. COUSAR | |
| Appellant | No. 327 EDA 2015 |

Appeal from the Judgment of Sentence December 3, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003053-2012

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and OLSON, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED MARCH 03, 2016**

Appellant, Robert E. Cousar, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his conviction of accidents involving death or personal injury.[1] We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Appellant raises the following issues for our review:

> WHETHER THE TRIAL COURT ERRED IN FAILING TO CONSIDER APPELLANT'S "SUBSTANTIAL COMPLIANCE" WITH THE HIT-AND-RUN STATUTES[?]
>
> WHETHER THE EVIDENCE WAS INSUFFICIENT TO

---

[1] 75 Pa.C.S.A. § 3742.

SUPPORT THE TRIAL COURT'S VERDICT[?]

WHETHER THE TRIAL COURT'S VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE[?]

(Appellant's Brief at 4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Giovanni Campbell, we conclude Appellant's issues on appeal merit no relief. The trial court opinion comprehensively discusses and properly disposes of those questions. (*See* Trial Court Opinion, filed April 7, 2015, at 5-10) (finding: **(issues 1 and 2)** evidence established Appellant was driver of vehicle that struck and injured victim, and Appellant failed to remain at scene of accident until he fulfilled requirements of 75 Pa.C.S.A. § 3744; Appellant's argument that he met his statutory obligation because his father called police to report Appellant's involvement in accident fails because Appellant's own conduct did not constitute substantial compliance with hit-and-run statute; specifically, Appellant did not supply his name, address, and vehicle registration number to anyone at scene, or provide anyone opportunity to request Appellant's driver's license and information relating to financial responsibility; further, Appellant failed to render reasonable assistance to victim or make arrangements for transport of victim to hospital when it was apparent that victim required medical treatment; Appellant also did not wait for police to arrive at accident scene, even though Appellant knew police were responding to 911 call placed by victim's friend; additionally, Appellant,

failed to report his involvement in accident promptly and give his pertinent information to police by phone or in person; under these circumstances, evidence was sufficient to establish Appellant's non-compliance with hit-and-run statute and to support Appellant's conviction of accidents involving death or personal injury; **(issue 3)** Appellant was non-compliant with hit-and-run statute in several ways; Appellant fled scene of accident and while he might have experienced remorse, this did not compel Appellant to return to scene of accident, present himself promptly to police, or call police to report accident as required by hit-and-run statute; instead, Appellant left his father to call police while Appellant went to sleep and then went to work in morning; Appellant's actions demonstrated complete disregard of duties imposed on drivers by law; based on these facts, court finds no basis to conclude that verdict was against weight of evidence). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/3/2016

- 3 -

IN THE COURT OF COMMON PLEAS
FOR THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL

COMMONWEALTH OF PA : CP-51-CR-0003053-2012

v. :

ROBERT COUSAR :

**FILED**

APR 0 7 2015

Criminal Appeals Unit
First Judicial District of PA

**MEMORANDUM OPINION**

*CAMPBELL, J.*                                         April    7    , 2015

**Procedural History**

On September 30, 2014, Defendant Robert Cousar proceeded to trial before this Court, sitting without a jury. Defendant was convicted of accident involving death or personal injury (75 Pa.C.S. § 3742(A)), as a felony of the third degree. Sentencing was deferred for preparation of a presentence investigation report.

On October 10, 2014, Defendant filed a motion to reconsider.

On December 3, 2014, the motion to reconsider was denied and Defendant was sentenced to 6-23 months to be served on house arrest, followed by five years probation

On December 15, 2014, a Defendant filed a post-sentence motion, which motion was denied on December 17, 2014.

A timely Notice of Appeal was filed on January 16, 2015.

On February 9, 2015, the Court entered an order directing the filing of a Statement of Matters Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b).

On March 2, 2015, appellate counsel filed a Rule 1925(b) statement.

On March 17, 2015, the Court entered an order directing the filing of an Amended Statement of Matters Complained of on Appeal.

On March 30, 2015, Defendant filed an amended Rule 1925(b) statement.

## Factual History

On July 4th weekend in 2011, Coralee Jackson and her husband Terry Crantshaw were their friend Anthony Kelley and Mr. Crantshaw's brother Dwight, returning home from watching fireworks and visiting the Sugar House Casino. N.T. 9/30/14, pp. 11-14, 29, 47-48. Anthony Kelley, was crossing the street in the vicinity of 2nd and Spring Garden Streets in Philadelphia when he was struck by a car. N.T. 9/30/14, pp. 15-17, 37, 48-49. The driver of the car was Defendant, Robert Cousar. N.T. 9/30/14, p. 17. Defendant stopped and exited his vehicle as Ms. Jackson came over to see Mr. Kelley, then she called 911. N.T. 9/30/14, pp. 21-23, 40-41, 51, 57. Mr. Kelley was lying on the side of the roadway with his leg twisted, glass and gravel in his head and leg, and bleeding from the head. N.T. 9/30/14, pp. 21, 25, 52.

At some point the passenger in Mr. Cousar's car exited the vehicle and started hollering at Mr. Cousar telling him "this looks bad" and saying "we got to go". N.T. 9/30/14, pp. 23, 41, 44, 45. Defendant and his passenger then got back in the car and Defendant drove off. N.T. 9/30/14, pp. 23-24, 50-52, 57.

Police Officer Jimmy Brown testified that he was the assigned accident investigator. N.T. 9/30/14, p. 59. On July 4, 2011, Office Brown received a message from Defendant's father that his son had been involved in an accident. N.T. 9/30/14, pp. 67-68. The call came in about 12 hours after the accident. N.T. 9/30/14, pp. 70-71. Officer Brown went to 4168 Poplar Avenue, where he observed the vehicle and took photographs. N.T. 9/30/14, pp. 63-64. The car windshield was smashed. N.T. 9/30/14, p, 68.

On July 7, 2011, Defendant met with Officer Brown at police headquarters and gave a statement. N.T. 9/30/14, p. 65. His statement (Exhibit C-13) was, in relevant part:

2

I WAS TRAVELING W/B ON SPRING GARDEN IN THE LEFT LANE WHEN ALL OF A SUDDEN A B/M DARTED IN FRONT OF ME. I TRIED TO STOP BY SLAMMING ON MY BRAKES AND SWEARVING (sic) TO THE RIGHT BECAUSE I THOUGHT I WOULD BE ABLE TO MISS HIM. ONCE CONTACT WAS MADE, HE HIT THE WINDSHIELD AND ROLLED OFF INTO THE ST. I STOPPED IMMEDIATLEY, SET THE HAND BRAKES AND GOT OUT. I WENT TO THE GUY AND TRIED TO GET A RESPONSE FROM HIM BY SHACKING (sic) HIM. HE DIDN'T RESPOND, SO I TRIED TO LIFT HIM UP AND PUT HIM IN THE CAR AND TAKE HIM TO THE HOSPITAL. THEN PEOPLE BEGAN TO GATHER AROUND AND SAID, DON'T MOVE HIM AND AT THAT TIME I STOOD BACK AND STARTED TELLING PEOPLE TO CALL 911. I WAITED AROUND FOR ABOUT 5 MIN AND MY FRIEND DOUG SAID, YO WHAT ARE YOU GOING TO DO? IT'S NOT LOOKING GOOD. I TOLD HIM I NEEDED TO GET THE CAR BACK TO MY FATHER. AT THAT POINT WE JUMPED IN THE CAR AND LEFT. I CALLED MY DAD AND TOLD HIM WHAT HAD HAPPENED. DOUG WANTED TO GET OUT A FEW BLOCKS AWAY, SO I DROPPED HIM OFF AND I TRIED TO MAKE IT HOME BECAUSE MY WINDSHIELD WAS COMPLETELY SHATTERED. I MADE IT TO 33RD & GIRARD AVE WHEN I SIDE SWIPED A TREE STUMP THAT WAS HANGING OUT INTO THE STREET FROM THE CURB. AT THAT POINT THE CAR WOULDN'T MOVE. I CALLED MY DAD AGAIN AND TOLD HIM THAT THE CAR WOULDN'T MOVE. A SHORT TIME LATER MY DAD SHOWED UP IN MY AUNTS CAR AND TOOK ME HOME. ONCE WE ARRIVED HOME MY DAD CALLED A TOW TRUCK TO GO PICK UP THE CAR. I WENT TO SLEEP BECAUSE I HAD TO GO TO WORK THAT MORNING 10AM

Defendant's statement also stated that he did not call the police because his father said he would do so.

Complainant Kelley testified that that the last thing he remembers was crossing the street, about to step up on to the median, and the next thing he recalls was waking up in the hospital. N.T. 9/30/14, pp. 77-78. His injuries included skin and scalp injuries, fractured left shoulder, torn/scraped skin on his shoulder, elbows, forearm and knees, a fractured vertebra, multiple leg and ankle fractures. N.T. 9/30/14, pp. 78-80. He underwent surgery, was hospitalized for a week, and then stayed in a rehabilitation center for approximately 2 ½ months until his insurance ran out. N.T. 9/30/14, p. 80-81. Mr. Kelley's Thomas Jefferson University Hospital medical records were introduced as business records through an appropriate custodian. C-14, N.T.

3

9/30/14, pp. 85-86. Kelley testified that he had a total of three surgeries on his right leg, that he walks with a cane, that he is no longer able to play sports, and he requires help from family members for basic tasks such as grocery shopping. N.T. 9/30/14, p. 82.

Defendant's father, Robert Cousar, Jr., testified that Defendant called him following the accident at approximately 2:40 in the morning on July 3, 2011. Defendant told his father that he had been involved in an accident at 2nd and Spring Garden that he had hit a person with the car. N.T. 9/30/14, p. 108.

He then called again to say he could not get home and asked to be picked up. Mr. Cousar went to get Defendant and made arrangements for the car to be towed. N.T. 9/30/14, pp. 99-100. After they got home, Mr. Cousar got information about the incident from Defendant, after which Defendant went to sleep because he had to work in the morning. Mr. Cousar made multiple calls, ultimately leaving a message for Officer Brown. N.T. 9/30/14, pp. 101-102.

## Discussion

Defendant's Amended Statement of Errors Complained of on Appeal purports to raise 10 errors. However, on close examination, Defendant's challenge is to: the sufficiency of the evidence; whether it was error to admit evidence of the extent of the complainant's injuries; and whether the verdict was against the weight of the evidence.[1]

---

1 Within his challenges to the sufficiency and weight of the evidence, Defendant also criticizes the verdict for lack of a description of evidence considered, explanation or justification for the verdict by the Court. There is no such requirement in the law. Whether a judge or a jury, a factfinder simply renders a verdict of guilty or not guilty on the crimes charged. "[T]here is no authority for special verdicts in criminal trials, and '[t]he proposal of special verdicts in criminal trials to determine what issues the jury actually resolved has been almost universally condemned.' *Commonwealth v. Samuel*, 599 Pa. 166, 961 A.2d 57, 64 (Pa. 2008)." *Commonwealth v. Jacobs*, 614 Pa. 664, 681, 39 A.3d 977, 987 (Pa. 2012). Although there may be circumstances where the factfinder will answer special interrogatories (see *Commonwealth v.*

4

## 1. The evidence was sufficient to support Defendant's conviction.

A claim challenging the sufficiency of the evidence presents a question of law. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1267 (1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.*

Our Supreme Court has instructed:

> [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Ratsamy*, 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007).

*Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa.Super. 2013).

The statute for which Defendant stands convicted, § 3742, relating to accidents involving death or personal injury, provides:

---

*Baker*, 72 A.3d 652, 656 (Pa. Super. 2013), this is not such a circumstance, nor were any special interrogatories requested. Defendant also complains that the court erred in denying his post-trial motion for reconsideration as a matter of law and for failing to respond. First, we note that there is no such motion for reconsideration of a verdict under the Pennsylvania Rules of Criminal Procedure. If the motion was intended to be for extraordinary relief pursuant to Pa.R.Crim.P. 704(b), then it did not conform to the requirements of that rule. Moreover, it is axiomatic that "Where a trial court refuses to reconsider an order, appeal lies only from the underlying order and not from the refusal to reconsider. *City of Philadelphia v. Glim*, 613 A.2d 613 (Pa. Cmmw. 1992).

5

(a) General rule. -- The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid). Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S. § 3742

§ 3744, relating to duty to give information and render aid, provides, in pertinent part:

(a) General rule. -- The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle or other property which is driven or attended by any person shall give his name, address and the registration number of the vehicle he is driving, and shall upon request exhibit his driver's license and information relating to financial responsibility to any person injured in the accident or to the driver or occupant of or person attending any vehicle or other property damaged in the accident and shall give the information and upon request exhibit the license and information relating to financial responsibility to any police officer at the scene of the accident or who is investigating the accident and shall render to any person injured in the accident reasonable assistance, including the making of arrangements for the carrying of the injured person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if requested by the injured person.

(b) Report of accident to police. -- In the event that none of the persons specified are in condition to receive the information to which they otherwise would be entitled under subsection (a) and no police officer is present, the driver of any vehicle involved in the accident after fulfilling all other requirements of section 3742 (relating to accidents involving death or personal injury) and subsection (a), insofar as possible on his part to be performed, shall forthwith report the accident to the nearest office of a duly authorized police department and submit to the police department the information specified in subsection (a).

75 Pa.C.S. § 3744.

Here, the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, and granting it the benefit of all reasonable inferences, establishes that:

1. Defendant was the driver of a vehicle involved in an accident resulting in injury to another person;

2. Defendant did not remain at the scene of the accident until he had fulfilled the requirements of section 3744;

6

3. Defendant did not give his name, address and the registration number of the vehicle was driving, to any person at the scene, or provide the opportunity to request of him his driver's license and information relating to financial responsibility;

4. Did not render reasonable assistance to Mr. Kelley, and did not make arrangements for the carrying of the injured Mr. Kelley for medical treatment;

5. It was apparent to Defendant that treatment for Mr. Kelley was necessary ;

6. Mr. Kelley was not in condition to receive Defendant's name, address and the registration number of the vehicle he was driving;

7. Defendant did not wait for police which he knew were responding to the 911 call;

8. Defendant did not forthwith report the accident to the nearest office of a duly authorized police department and submit to the police department his name, address and the registration number of the vehicle was driving, or provide the opportunity to request of him his driver's license and information relating to financial responsibility; and

9. Defendant did not call the police to provide department his name, address and the registration number of the vehicle was driving, or provide the opportunity to request of him his driver's license and information relating to financial responsibility.

Despite having failed to comply with any of these statutory requirements, Defendant nonetheless argued at trial, and implicitly in his Rule 1925(b) Statement, that because he told his father about the accident, after having fled the scene, and his father made calls to the police, this somehow satisfied Defendant's obligations. It did not.

Essentially, Defendant fled the scene without leaving any identifying information, left the man he struck bleeding and unconscious on the road without rendering aid, and then left it to his father to report the accident while he went off to bed and thence to work the next morning. Defendant's conduct was not within the letter or the spirit of the statute, nor did it constitute substantial compliance. Compare *Commonwealth v. Latshaw*, 555 A.2d 1350 (Pa. Super. 1989) (substantial compliance found when driver left accident scene after other party refused to accept

7

identification information); *Commonwealth v. Gosnell*, 476 A.2d 46, 47 (Pa. Super. 1984) (substantial compliance found when appellant stopped and aided victim and provided name and address, but failed to reveal that it was he who hit the victim, until six or seven hours after the accident); *Commonwealth Dep't of Transp. v. Stamoolis*, 297 A.2d 532 (Pa. Cmwlth. 1972) (substantial compliance found when appellant drove one and one-half miles down the road after the accident occurred to find a suitable place to park, and then returned to the accident scene). But see *Commonwealth v. Long*, 831 A.2d 737, 739 (Pa. Super. 2003) (Long believed he had hit a garbage bag on the highway, but later returned and found the victim's body. He reported the accident anonymously, but did not come forward with full information about himself and the fact that he was the driver until several days later).

The evidence was clearly sufficient to demonstrate that Defendant completely disregarded his obligations under the law to remain at the scene until medical aid was provided to the severely injured victim, and to provide his information at the scene or in person to police.

2. **It was not error to admit evidence as to the extent of the complainant's injuries.**

The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. *Commonwealth v. Seilhamer*, 862 A.2d 1263, 1270 (Pa. Super. 2004). Admission of probative and relevant evidence of the extent of Mr. Kelley's injuries was an appropriate exercise of the Court's discretion.

The statute under which Defendant was prosecuted provides, in relevant part:

(b) Penalties.

(1) Except as otherwise provided in this section, any person violating this section commits a misdemeanor of the first degree.

8

(2) If the victim suffers serious bodily injury, any person violating subsection (a) commits a felony of the third degree,

75 Pa.C.S. § 3742. The Vehicle Code defines "serious bodily injury" as follows:

"Serious bodily injury." --Any bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.

75 Pa.C.S. § 102

Here, whether the injuries constituted serious bodily injury was a fact in dispute. N.T. 9/30/14, p. 75. Accordingly, the burden was on the Commonwealth to establish this element beyond a reasonable doubt, in order to prove the offense as a felony of the third degree.

Evidence from Mr. Kelley and the medical records established the severity of the injuries and protracted loss or impairment.[2] This evidence, which went to an essential element of the offense charged was admissible and relevant.

### 3. The verdict was not against the weight of the evidence.

Defendant asserts that the verdict was against the weight of the evidence.

The Pennsylvania Supreme Court has explained:

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. *Commonwealth v. Whiteman*, 336 Pa. Super. 120, 485 A.2d 459 (Pa. Super. 1984). Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. *Tibbs*, 457 U.S. at 38 n. 11. [footnote omitted] An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177 (Pa. 1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Thompson*, supra. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather,

---

2 In a related ground Defendant alleges that it was error to permit Mr. Kelley to testify about his injuries (Amended 1925(b) Statement, ¶ 5), while conceding that even if it were error, it was harmless in light of the testimony of the hospital record custodian

9

the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.*

*Commonwealth v. Widmer*, 560 Pa. 308, 319-320, 744 A.2d 745, 751-752 (Pa. 2000). Further:

The decision of whether to grant a new trial on the basis of a challenge to the weight of the evidence is necessarily committed to the sound discretion of the trial court due to the court's observation of the witnesses and the evidence. *Brown*, 538 Pa. 410, 648 A.2d 1177. A trial court should award a new trial on this ground only when the verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152 (Pa. 1986). A motion alleging the verdict was against the weight of the evidence should not be granted where it merely identifies contradictory evidence presented by the Commonwealth and the defendant.

*Commonwealth v. Chamberlain*, 612 Pa. 107, 133-134, 30 A.3d 381, 396 (Pa. 2011).

Here, the evidence clearly established that Defendant in several ways violated his statutory obligations, and his attempts to excuse his wrongful conduct by asserting substantial compliance were without merit. Defendant fled the scene. While he may have experienced remorse, he was not compelled by that remorse to return to the scene, promptly present himself to the police, or even call the police himself. Leaving the call to his father while going to sleep, then going to work the next morning, demonstrates only his complete disregard of the duties imposed upon a driver by the law. We find no basis on which to conclude that the verdict was contrary to the evidence and our sense of justice is not shocked by the verdict.

Accordingly, the judgment of sentence should be affirmed.

By The Court:

Campbell, J.

10

Commonwealth v. Robert Cousar          Case Number: CP-51-CR-3053-2012

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing upon the person(s), and in the manner indicated above, which service satisfies the requirements of Pa.R.Crim.P.114:

Defense Counsel/Party:

        Edward Wiley, Esquire
        2449 Golf Rd Ste 12
        Philadelphia, PA 19131

Type of Service:     (X) First Class Mail

District Attorney:

        Hugh Burns, Esquire
        Office of the District Attorney
        Three South Penn Square
        Philadelphia, PA 19107

Type of Service     (X) First Class Mail

**Dated:  April 7, 2015**

Vanessa A. Montone
Judicial Secretary to
Honorable Giovanni O. Campbell